IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN K. HAWKINS<br>P.O. Box 1009<br>Moon Township, PA 15108<br><br>      PLAINTIFF,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS<br>CORPORATION<br>1 Health Plaza<br>East Hanover, NJ 07936<br><br>      DEFENDANT. | Case No. _____<br><br>JURY DEMANDED |

## COMPLAINT AND JURY DEMAND

NOW COMES plaintiff Joan K. Hawkins ("Ms. Hawkins"), by and through counsel, and hereby sue the Defendant, Novartis Pharmaceuticals Corporation ("Novartis" or "Defendant"), a Delaware corporation with principal offices located at 1 Health Plaza, East Hanover, New Jersey, 07936-1080 and for her cause of action state:

### I.   INTRODUCTION

1. The drugs Aredia® and Zometa®, each produced and marketed by Novartis and other related Novartis entities, each cause and precipitate osteonecrosis of the jaw, mandible or maxilla bone among patients taking those drugs. Osteonecrosis is bone death of an area of the bone. Osteonecrosis of the jaw is a permanently disfiguring and extremely painful condition, and can result in the complete loss of the patient's jaw bone. Plaintiff Ms. Hawkins in this action was infused with Aredia® and Zometa®, and has suffered osteonecrosis of the jaw bone.

### II.   PARTIES

#### A.   PLAINTIFF

2. Plaintiff Joan K. Hawkins is a citizen and resident of the State of Pennsylvania,

residing in Moon Township, Pennsylvania. She was prescribed, purchased, and was infused with Aredia® and Zometa®, and as a result thereof suffered severe osteonecrosis of the jaw, including pain, infection, and disfigurement. As is the case with all patients suffering from this condition, Ms. Hawkins is at risk for needing invasive procedures or surgeries in the future should her condition require it or should it deteriorate further.

### B.   DEFENDANT

3.   Defendant Novartis is a Delaware corporation with its corporate headquarters located at 1 Health Plaza, East Hanover, New Jersey, 07936-1080.

4.   At all times relevant hereto, Novartis was engaged in the business of marketing, distributing, promoting, testing, labeling and selling the drugs Aredia® and Zometa®. Novartis, at present or in the past, markets and distributes Aredia® and Zometa® throughout the world, including all fifty states in the United States, and throughout Pennsylvania.

### III.   JURISDICTION AND VENUE

5.   This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and because this is an action by individual Plaintiff who is a citizen of a different state from the Defendant. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and 1391(c).

### IV.   FACTUAL BACKGROUND

6.   Aredia® and Zometa® are classified as bisphosphonates and are prescribed for the management of metastatic disease to the bone and other bone diseases and conditions. Zometa® is Novartis's "successor" drug to Aredia®, as Aredia® was the first generation version of the drug Zometa®. Zometa® is now marketed by Novartis for all or almost all of the uses for which it previously marketed Aredia®. Aredia® and Zometa® have been approved by the United

States Food and Drug Administration.

7. There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphosphonates include the following: pamidronate (Aredia®); zoledronic acid or zoledronate (Zometa®); ibandronate (Bondronat®); risedronate sodium (Actonel®); and alendronate (Fosamax®). The non-nitrogenous bisphosphonates include the following: etidronate (Didronel®); clodronate (Bonefos® and Loron®); and tiludronate (Skelid®). Aredia® and Zometa® contain a nitrogen atom, whereas etridonate, clodronate, and tiludronate do not.

8. Studies and medical practices report the frequent and common occurrence of osteonecrosis of the jaw in the users of the nitrogenous bisphosphonates, including Aredia® and Zometa®.

9. Novartis knew or should have known of the disease phosphorus necrosis of the jaw or "phossy jaw," which appeared in the 1800s in persons mining white phosphorus and persons working in white phosphorus match factories. Phossy jaw had been nearly eliminated in the last century through industrial hygiene. The operation of the active ingredients in both Aredia® and Zometa® acts and has the same effect as the phosphorus byproducts that caused "phossy jaw." It was foreseeable that any drug with the characteristics of Aredia® and Zometa® would carry the risk of a "phossy jaw"-like reaction.

10. The process by which old bone is taken away and new bone is created is called "remodeling." Both Aredia® and Zometa® were designed specifically to affect the "remodeling" process. Medical science knew, and therefore Novartis knew or should have known, that the jaw operates differently from other bones in the body in that it is subject to unique stresses, and accordingly "remodels" at a far, far greater rate than other bones in the body. Medical science

knew, and therefore Novartis knew or should have known, that bisphosphonate drugs had a "site preference" for high remodeling areas, and therefore would have a heightened effect on bones that remodel at a higher rate. Despite this knowledge not one dentist, maxillofacial surgeon, or other jaw or mouth bone specialist was used or assigned to any clinical trial done by Novartis for either Aredia® or Zometa®. This failure constituted a design flaw in every clinical trial and tainted all information provided to the FDA, other regulatory authorities, and peer reviewed journals. Nonetheless, despite any intention of examining the jaw or mouth and without utilization of any oral specialists in the clinical trials, Novartis's data captured at least six persons who self-reported ONJ-like symptoms in the Zometa® clinical trials. Novartis failed properly to report this to the FDA as part of Novartis's application for approval to market the drug, and further failed to report other adverse event reports to the FDA in a timely manner.

11. Novartis knew and or should have known that bisphosphonates, including Aredia® and Zometa®, inhibit the activity of osteoclasts in the bone. Similarly, Novartis knew or should have known that bisphosphonates cause changes specific to patients' mandibles (lower jaws) and maxillae (upper jaws) and that these changes appear to be cumulative in nature.

12. Novartis also knew or should have known that these factors can progress to jaw necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

13. On information and belief, in the year 2002 or before, Novartis was notified by one physician that he had dozens of cases in which patients taking Aredia® had experienced problems so severe that they had lost portions of their jaws. Other oral surgeons during that time frame and before had been reporting such problems to Novartis. On information and belief, Novartis had similar information as to adverse effects caused by its drug Zometa®, which has similar properties and effects as Aredia® and is marketed by Novartis as a more effective

replacement for Aredia®. Nevertheless, Novartis did not undertake to advise physicians, notify the consuming public or place information about the possibility of suffering osteonecrosis of the jaw on their products until September of 2004. Novartis did not undertake to notify dental professionals until May of 2005. These efforts to date by Novartis to provide notice are not adequate to provide the public and health care professionals with the information needed to understand the risks inherent in the use of Aredia® and Zometa®, and indeed are themselves false and misleading.

14. Shortly after Novartis began selling Zometa®, reports of osteonecrosis of the jaw and other dental complications among users further exploded, indicating that Zometa® shared the class effects of the other nitrogenous bisphosphonates including Aredia®. Despite this knowledge, Novartis failed to implement further study of the risk of osteonecrosis of the jaw relative to Zometa® and Aredia®. Rather than evaluating and verifying the safety of Zometa® with respect to osteonecrosis of the jaw, Novartis proposed further uses of Zometa®, notably for osteoporosis under the names Reclast® or Aclasta® or other names, and upon information and belief, urged off-label uses on medical practitioners. Indeed, hundreds of articles have been written by qualified medical professionals and institutions and published in the top medical journals in the world demonstrating that Aredia® causes osteonecrosis of the jaw at a significant rate, and that Zometa® causes osteonecrosis of the jaw at an even higher rate.

15. Rather than warn patients and the medical community, and despite knowledge by Novartis of increased risk of osteonecrosis of the jaw in patients using Zometa®, Novartis continued and continues to defend and aggressively market Zometa®, while downplaying any unfavorable findings and overstating its benefits. This includes attempting to have it approved for use in the treatment of osteoporosis, and in seeking approval to market the drug for

osteoporosis changing the name of the drug to "Reclast®" or "Aclasta®" or other names in order to conceal the link between the drug and osteonecrosis of the jaw.

16.     Because of the long "half-life" of the drugs Aredia® and Zometa® in the body, the drug remains in the bones of persons who have been infused with it for at least many, many years or even permanently. For this reason, onset of osteonecrosis of the jaw or worsening of a patient's condition can occur years after infusions of the drug have been discontinued. For this reason, the label indications that call for an infusion of the drug every three-four weeks in perpetuity constitute an overdose.

17.     Despite knowledge of the specific risk, Novartis have failed timely to initiate studies to further investigate risks associated with the use of Aredia® and Zometa®.

18.     Further, Novartis had a duty fully to test and evaluate Aredia® and Zometa® prior to their introduction to the market, to ensure that the drugs were safe to use for their intended purpose. Novartis failed to satisfy this duty.

19.     Upon information and belief Novartis' Safety Reporting System (also known as "STL") generated errors and affected the reporting of safety data to the FDA and negatively impacted clinical trials. To date the system is obsolete and still generating inaccurate safety data that is being submitted to the FDA.

20.     Novartis failed properly to conduct "dosing studies" to ascertain the minimum effective quantities of the drugs Aredia® and Zometa®, and thereby to establish the proper quantities of the drugs to be administered to patients and the proper number of infusions which patients should receive. Identifying the minimum effective dosage and setting the dosage instructions accordingly are critical to avoiding the occurrence of side effects. Novartis, to maximize profit, for most or all label indications specified a dosage and dosing schedule of

Zometa® far above any indicated for palliative effect. This dosing schedule, for most indications, calls for an infusion of the drug every three to four weeks ***forever***, without any end point or time at which the use of the drug should be discontinued. As a result of Novartis's failure to instruct as to the proper dosage, upon information and belief the amount of the drug actually administered to Plaintiff constituted an overdose, and contributed to the side effects and harm she suffered.

## COUNT I
## STRICT LIABILITY

21.  Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

22.  The Defendant was engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising and otherwise distributing Aredia® and Zometa® in interstate commerce, which it sold and distributed throughout the world, including the State of Pennsylvania.

23.  Ms. Hawkins was using Aredia® and Zometa® in the manner for which they were intended, or in a reasonably foreseeable manner.

24.  Aredia® and Zometa® were expected to and did reach Ms. Hawkins without substantial change in their condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised and otherwise distributed.

25.  Ms. Hawkins was not aware of, and reasonably could not have discovered, the actual dangerous natures of Aredia® and Zometa®.

26.  Aredia® and Zometa® cause increased risks of osteonecrosis of the jaw upon consumption, and therefore constitute products unreasonably dangerous for normal use due to their defective designs, defective manufacture, and the Defendant's misrepresentations and

7

inadequate facts disclosed to Ms. Hawkins and her health care providers including, *inter alia*, the actual risk of developing osteonecrosis of the jaw and the permanent, irreversible harm associated with this disease.

27.     As a direct and proximate result of Defendant's manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Zometa® in interstate commerce, Ms. Hawkins has suffered osteonecrosis of the jaw, and is at an increased risk of developing other diseases and conditions.

28.     The Defendant, therefore, is strictly liable to Ms. Hawkins and Ms. Hawkins is entitled to compensatory damages.  Additionally, Defendant's conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the consumers.  Ms. Hawkins therefore is entitled to punitive damages in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE - NEGLIGENT MANUFACTURE

29.     Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

30.     It was the duty of the Defendant to use reasonable care in the manufacturing, creating, designing, testing, sterilizing, packaging, supplying, and otherwise distributing Aredia® and Zometa®.

31.     Contrary to its duty, the Defendant failed:  adequately and properly to test and inspect Aredia® and Zometa® so as to ascertain whether or not they were safe and proper for the purpose for which they were designed, manufactured and sold; adequately and properly to conduct a dosing study or otherwise to test Aredia® and Zometa® to ascertain the minimum effective dosages and to use this information to instruct users of the drugs and/or their health care providers of the proper dosages so as to minimize the risk of development of osteonecrosis of jaw or other side effects; to utilize and/or implement a reasonably safe design in the

manufacture of Aredia® and Zometa®; to manufacture Aredia® and Zometa® in a reasonably safe condition appropriate for the use for which they were intended.

32. Defendant manufactured and sold Aredia® and Zometa®, which as constituted are and were hazardous to Plaintiff's health. Defendant's manufacture and sale of Aredia® and Zometa® as constituted caused Ms. Hawkins to suffer adverse side effects and disease.

33. Defendant was otherwise careless and negligent.

34. As a direct and proximate result of Defendant's negligent, reckless, and careless manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Zometa® in interstate commerce, Ms. Hawkins has suffered osteonecrosis of the jaw, is at an increased risk of developing other diseases and conditions, and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT III
## NEGLIENCE – FAILURE TO WARN

35. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

36. It was the duty of the Defendant to use reasonable care in the labeling, marketing, selling, advertising, and promoting of Aredia® and Zometa®, and to warn Ms. Hawkins and her medical providers of the true risk of osteonecrosis of the jaw and other side effects when using Defendant's drugs.

37. Contrary to its duty, the Defendant failed: adequately and properly to warn Ms. Hawkins of the risks of serious complications and bodily harm when Aredia® and Zometa® are used in a manner for which they were intended; adequately and properly to warn Ms. Hawkins of the risks of diseases when Aredia® and Zometa® are used in a manner for which they were

intended; adequately and properly to label Aredia® and Zometa® so as to warn Ms. Hawkins of the risks of complications and disease; and adequately and properly to label Aredia® and Zometa® so as to warn Ms. Hawkins of the risks of osteonecrosis of the jaw.

38. Further, Defendant failed to meet the standard of care set by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations. Defendant further failed in the following respects:

   a. The labeling lacked adequate information on the use of the drugs Aredia® and Zometa® (21 C.F.R. Section 201.56(a) and (d));

   b. The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitation, osteonecrosis of the jaw, and other adverse medical conditions as soon as there was reasonable evidence of their association with the drugs (21 C.F.R. 201.57(e));

   c. There was inadequate information for patients for the safe and effective use of Defendant's drugs (21 C.F.R 201.57(f)(2));

   d. There was inadequate information regarding special care to be exercised by Ms. Hawkins's doctors for safe and effective use of Defendant's drugs (21 C.F.R. 201.57(f)(1));

   e. The labeling was misleading and promotional (21 C.F.R. 201.56(b)); and

   f. Defendant's acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331.

39. Defendant's products Aredia® and Zometa® were unaccompanied by proper and adequate warnings regarding the risk of osteonecrosis of the jaw associated with the use of Defendant's products and the scope, severity and duration of such injuries.

40. Despite Defendant's failure to provide adequate warnings to protect users or consumers of Aredia® and Zometa®, Defendant nevertheless continued aggressively to market, promote, distribute, and sell the dangerously defective products.

41. As a result of Defendant's negligence and the violations of the statutes and regulations listed above, Ms. Hawkins suffered injuries and damages as alleged herein.

42.    As a direct and proximate result of Defendant's failure to warn, Ms. Hawkins has developed osteonecrosis of the jaw, is at risk of developing other diseases, and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

43.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

44.    Defendant expressly warranted to Ms. Hawkins, by and through statements made by Defendant or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Aredia® and Zometa® were safe, effective, fit and proper for their intended uses.

45.    In using Aredia® and Zometa®, Ms. Hawkins and her health care providers relied on the skill, judgment, representations and foregoing express warranties of the Defendant. Said warranties and representations were false in that the aforementioned products were not safe and were unfit for the uses for which they were intended.

46.    As a direct and proximate result of Defendant's breaches of warranties, Ms. Hawkins has developed osteonecrosis of the jaw, is at risk of developing other diseases, and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT V
## BREACH OF IMPLIED WARRANTY

47.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

48.   Prior to the time that Aredia® and Zometa® were used by Ms. Hawkins, Defendant impliedly warranted to Ms. Hawkins that Aredia® and Zometa® were of merchantable quality and safe and fit for the use for which they were intended.  Ms. Hawkins is unskilled in the research, design and manufacture of Aredia® and Zometa®, and reasonably relied on the skill, judgment and implied warranty of the Defendant in using Aredia® and Zometa®.

49.   Aredia® and Zometa® were neither safe for their intended uses nor of merchantable quality, as warranted by Defendant, in that they had dangerous propensities when put to their intended uses and would cause severe injuries to the user.

50.   As a direct and proximate result of Defendant's breaches of warranties, Ms. Hawkins has developed osteonecrosis of the jaw, is at risk of developing other diseases, and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

WHEREFORE, Plaintiff prays that this honorable Court enter judgment against Novartis, and in favor of the Plaintiff, and to award the following relief:

a.   Award Ms. Hawkins all damages allowed by law to compensate her for the physical injury, pain, suffering, emotional distress, mental anguish, physical disability and physical disfigurement and other losses which she has endured;

b.   Award Ms. Hawkins damages equal to the amount of her medical and health care costs and expenses incurred to present and in the future;

c.   Award Ms. Hawkins damages in an amount sufficient to compensate her for the likely future deterioration of her medical condition as a result of the harm she has suffered from use of Defendant's products;

d.   Award Plaintiff damages equal to any amount of lost wages and earnings;

e.   Award Plaintiff punitive/exemplary damages to the extent necessary and appropriate to punish and deter the conduct complained of herein;

f.   Award Plaintiff attorneys' fees and costs, plus interest, as allowed by law; and

g.   Award Plaintiff such other and further legal and equitable relief as this honorable Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of this action.

VALAD & VECCHIONE, PLLC

_____
Bart T. Valad, Esq. (DC Bar No. 462814)
John J. Vecchione, Esq. (DC Bar No. 431764)
VALAD AND VECCHIONE, PLLC
3863 Plaza Drive
Fairfax, Virginia  22030
Telephone: (703) 352-4800
Fax:  (703) 352-4820

*Attorneys for Plaintiff Joan K. Hawkins*

Dated:  May 27, 2008

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Joan K. Hawkins, P.O. Box 1009,
Moon Township, PA 15108

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Allegheny, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John J. Vecchione, Valad & Vecchione, PLLC
3863 Plaza Dr., Fairfax Va. 22030
(703)352-4800

## DEFENDANTS

Novartis Pharmaceuticals Corporation
1 Health Plaza, East Hanover, NJ, 07936

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)   Morris County N.J.
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

● **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Diversity products liability against drug manufacturer; common law counts; MDL set up in MD Tennessee

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ >$75,000.0   Check YES only if demanded in complaint
JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE May 27, 2008   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.